COURT OF CHANCERY
OF THE
STATE OF DELAWARE

CHRISTIAN DOUGLAS WRIGHT
MAGISTRATE IN CHANCERY

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DE 19801-3734

September 8, 2025

Rudolf Koch, Esquire
Travis S. Hunter, Esquire
Gabriela Z. Monasterio, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801

Robert T. Jones
2925 Bookhout Street
Dallas, TX 75201

> Re:  *Bryan Dorsey, et al. v. Robert T. Jones*,
>      C.A. No. 2024-0134-CDW

Dear Counsel and Party:

Through this letter, the court resolves eight pending motions filed by defendant and counterclaim plaintiff Robert Jones ("Jones").[1] This action has been given heavy attention from the parties and the court over the past 18

---

[1] Mot. for Summ. J. for Indemnification and Advancement of Legal Fees Pursuant to Del. Gen. Corp. Law § 145, Docket Item ("D.I.") 67; Mot. for Entry of Default Pursuant to R. 55(a), D.I. 86; Mot. to Confirm Interpleader of Funds by JPMorgan Chase Bank, N.A., D.I. 87; Mot. to Expedite and Req. for Immediate Status Conf., D.I. 88; Mot. to Strike Mot. to Dismiss as Defective and Unauthorized, D.I. 89; Mot. to Disqualify Couns. and Notice of Cross-Matter Ethical Conflict, D.I. 91; Mot. to Pres. and Produc. Representation and Conflict Mat'ls, D.I. 91; Mot. to Dismiss Deriv. Claims for Lack of Standing, D.I. 92.

months, so the court dispenses with a general factual recitation and proceeds directly to the motions.

## Motion to Dismiss Derivative
## Claims for Lack of Standing (D.I. 92)

Jones moves to dismiss the amended complaint[2] because, he says, Dorsey lacks standing to assert derivative claims on behalf of nominal defendant Roots Food Group Holdings, Inc. ("Company").[3] Jones asserts that because Dorsey "has granted an irrevocable proxy under 8 *Del. C.* § 212 to Jones over all shares under his control, . . . [he] cannot maintain standing to prosecute a derivative action where he has no shareholder authority."[4] According to Jones,

> [t]he shareholder agreement expressly requires all Founding Holders to grant proxy to Jones as a condition of receiving shares. That proxy, coupled with an interested governed by 8 *Del. C.* § 212, remain valid and enforceable. Dorsey lacks

---

[2] Verified Am. Compl. for Breach of Fid. Duty, Unjust Enrichment, and Conversion, D.I. 20 ("Am. Compl.").

[3] Mot. to Dismiss Deriv. Claims for Lack of Standing, D.I. 92 ("Deriv. Dismissal Mot."), ¶¶ 3–6. Jones actually brings this motion against both Jones and Roots Group Holdings LLC ("HoldCo"). *See id.* at 1; ¶ 2. The only claims HoldCo asserts are direct claims against Jones for conversion and unjust enrichment. *See* Am. Compl. ¶¶ 121–26 (conversion), ¶¶ 127–129 (unjust enrichment). Because HoldCo is not asserting any derivative claims on behalf of the Company, the court denies the Derivative Dismissal Motion as to HoldCo.

[4] Deriv. Dismissal Mot. ¶ 3.

> authority to override this agreement or act in contravention of the granted proxy.[5]

Jones cites no case law in support of this argument.

Jones' argument is plainly incorrect. "A proxy is evidence of an agent's authority to vote shares owned by another." *Eliason v. Englehart*, 733 A.2d 944, 946 (Del. Ch. 1999) (citing *Duffy v. Loft, Inc.*, 151 A. 223 (Del. Ch. 1930), *aff'd*, 152 A. 849 (Del. 1930)). As the court explained in *Hawkins v. Daniel*:

> The owner of shares acts as principal to grant agency power to the proxyholder. The proxyholder agrees to exercise the authority conferred under the proxy arrangement in accordance with its terms and the proxyholder's fiduciary duties as agent.

273 A.3d 792, 808 (Del. Ch. 2022) (citations omitted). Here, Dorsey's grant of proxy defines its scope, giving Jones the power "to vote and act on [Dorsey's] behalf and in [Dorsey's] name, place and stead with respect to [Dorsey's] Company Securities."[6] The proxy may be exercised "at any annual, special or other meeting of the stockholders of the Company, and at any adjournment of any such meeting, held during the term of this Agreement

---

[5] *Id.* ¶ 5.

[6] D.I. 92 Ex. A § 3.2.

and to act by written consent with respect to [Dorsey's] Company Securities[.]"[7]

The proxy agreement separates the voting rights in Dorsey's shares from the economic interest in them. That is all. It does not eliminate Dorsey's status as a stockholder of Roots; he still owns his shares. Nor does the proxy purport to require Dorsey to obtain Jones' permission to initiate derivative litigation on behalf of Roots. The motion to dismiss is denied on this basis.[8]

At the end of his motion, Jones alleges dismissal of the Amended Complaint is also justified because Dorsey and HoldCo have acted with unclean hands.[9] This argument also fails.

---

[7] *Id.*

[8] The court notes that Dorsey's only claim against Jones in the Amended Complaint (Count I, for breach of fiduciary duties) is presented as an alternative to the Company asserting the same claim directly. *See* Am. Compl. 28 n.8 ("All claims are now brought directly by the Company, but Dorsey remains as a plaintiff to raise the claims derivatively in the alternative to avoid Jones attempting to improperly remove Dorsey as a director of the Company and move to dismiss the counts on behalf of the Company. While Jones is precluded from doing so by the 225 Order, plaintiffs nevertheless bring these claims directly and derivatively out of an abundance of caution."). A ruling that Dorsey cannot assert Count I derivatively would not prevent Count I from going forward because Jones has not moved to dismiss Count I as a direct claim by the Company.

[9] Deriv. Dismissal Mot. ¶ 7.

The doctrine of unclean hands can be raised by litigants as an affirmative defense.[10] Like other affirmative defenses, unclean hands is an awkward dance partner for a motion to dismiss. The party asserting an affirmative defense bears the burden of proving it,[11] and the facts necessary to prove an affirmative defense are often not pleaded in a complaint—which is typically the only document the court can refer to when deciding a motion to dismiss.[12] Thus, "[u]nless it is clear from the face of the complaint that an affirmative defense exists and that the plaintiff can prove no set of facts to avoid it, dismissal of the complaint based upon an affirmative defense is inappropriate." *Stephen G. Perlman, Rearden LLC v. Vox Media, Inc.*, 2015

---

[10] *See, e.g.*, *New Start Hldgs., LLC v. Zhou*, 2024 WL 4039440, at *14 (Del. Ch. Sept. 4, 2024) ("Defendants invoked the doctrine of unclean hands as an affirmative defense.") (citation omitted); *Claros Diagnostics, Inc. S'holders Rep. Comm. ex rel. Goldberg v. OPKO Health, Inc.*, 2020 WL 829361, at *12–13 (Del. Ch. Feb. 19, 2020) (evaluating the doctrine of unclean hands as an affirmative defense); *cf. id.* ("Typically, . . . application of unclean hands is based upon a developed factual record.") (citing *Stone & Paper Invs., LLC v. Blanch*, 2019 WL 2374005, at *9 (Del. Ch. May 31, 2019)).

[11] *Desktop Metal, Inc. v. Nano Dimension Ltd.*, 2025 WL 904521, at *22 (Del. Ch. Mar. 24, 2025) ("[A] party asserting an affirmative defense bears the burden of proof.") (citing *Lighthouse Behav. v. Milestone Addiction*, 2023 WL 3486671, at *9 (Del. Ch. May 17, 2023)).

[12] *In re Gardner Denver, Inc.*, 2014 WL 715705, at *2 (Del. Ch. Feb. 21, 2014); *Hudson v. Wesley Coll., Inc.*, 1993 WL 525519, at *1 (Del. Ch. Nov. 19, 1993).

WL 5724838, at *12 (Del. Ch. Sept. 30, 2015).[13]  Here, it is not "clear from the face of the complaint" an unclean hands defense exists, so it would be inappropriate to dismiss the Amended Complaint for this reason.

**Motion to Disqualify Counsel (D.I. 91)**

With this motion, Jones seeks to have Richards, Layton & Finger, P.A. ("Counsel") disqualified as counsel for plaintiffs and counterclaim defendants because Counsel is also representing "Bhavin Shah in the Soroc matter, while Shah and related entities are allegedly funding the litigation defense in this case."[14]  Jones asserts this representation is "materially adverse and non-waivable under Delaware Rule of Professional Conduct 1.7."[15]  The court denies the motion because Counsel does not have an impermissible conflict of interest through its concurrent representation of plaintiffs and counterclaim defendants and a third-party.

---

[13] *See also Stone & Paper Invs., LLC v. Blanch*, 2023 WL 2809142, at *9 (Del. Ch. Apr. 6, 2023) ("Dismissing a complaint for unclean hands at the pleading stage is only appropriate in extreme circumstances.") (citing *Solak v. Sarowitz*, 2016 WL 7468070, at *12 (Del. Ch. Dec. 27, 2016)).

[14] Mot. to Disqualify Couns. and Notice of Cross-Matter Ethical Conflict, D.I. 91 ("Mot. to Disqualify") ¶ 1.  The "Soroc" matter referenced is *In re Decision One Corp.*, C.A. No. 2024-0126-PAW (Del. Ch.).

[15] Mot. to Disqualify ¶ 1.

Rule 1.7 of the Delaware Lawyers' Rules of Professional Conduct prohibits attorneys from representing a client "if the representation involves a concurrent conflict of interest." Del. Lawyers' R. Prof'l Conduct 1.7(a). Under Rule 1.7, a concurrent conflict of interest exists if:

> (1) the representation of one client will be directly adverse to another client; or

> (2) there is significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

*Id.* (paragraph breaks added). "A non-client litigant has standing to enforce Rule 1.7(a) when he or she can demonstrate that the counsel's conflict somehow prejudiced his or her rights. The non-client litigant does not have standing to merely enforce a technical violation of the Rules." *Appeal of Infotechnology, Inc.*, 582 A.2d 215, 221 (Del. 1990). The burden of proof is clear and convincing evidence. *Id.*

Responding to the allegations of conflict, plaintiffs maintain that "Plaintiffs are not engaged in any litigation against Mr. Shah or his company, Plaintiffs are not attempting to negotiate an arms-length transaction with Mr. Shah or his company, and Plaintiffs and Mr. Shah are plainly aware that they

are both represented by [Counsel]."[16] They assert that Jones failed to advance

"a single argument (let alone present[] clear and convincing evidence) as to

any actual prejudice or unfairness."[17] The court agrees.

Jones' arguments amount to conclusory assertions that, because both

parties in the separate litigations are represented by the same counsel, there

must be a conflict and there must be prejudice.[18] This showing does not meet

the clear and convincing burden of proof imposed upon Jones as a non-client

seeking Counsel's disqualification.[19] Indeed, Jones failed to submit *any*

---

[16] Pls.' Resp. to Robert T. Jones' Mot. to Disqualify Pls.' Couns., D.I. 93 ¶ 18.

[17] *Id.* ¶ 19.

[18] Mot. to Disqualify ¶ 4 ("Although the Soroc litigation and the present case involve different factual subject matter and legal issues, they are bound together by a shared law firm, the same individual attorneys, and Bhavin Shah, . . . a represented party in Soroc and the *alleged* funder of the litigation defense in this case.") (emphasis added); *id.* ¶ 5 ("Continued participation by [Counsel] poses a grave threat to the fairness and integrity of these proceedings. Independent representation is impossible while the firm remains entangled with adverse funding parties and conflicted interests").

[19] *See In re Martin*, 105 A.3d 967, 975 ("Clear and convincing evidence is evidence that produces an abiding conviction that the truth of the contention is 'highly probable.'") (quoting *In re Bailey*, 821 A.2d 851, 863 (Del. 2003)); *see also In re Rehab. of Indem. Ins. Corp., RRG*, 2014 WL 637872, at *2 (Del. Ch. Feb. 19, 2024) ("Vague and unsupported allegations are not sufficient to meet this disqualification standard.") (quoting *Dunlap v. State Farm Fire & Cas. Co.*, 2008 WL 2415043, at *1 (Del. 2008)).

evidence that Counsel has an impermissible conflict of interest or that Jones has suffered prejudice as a result of the concurrent representation.

There are also no common facts between the actions. The common fact—if it can be called that—is that nonparty Shah and certain unnamed affiliates are *allegedly* funding this litigation.[20] But, again, Jones provides no evidence of this other than conclusory and general allegations that Counsel's concurrent representation is adverse.[21] These allegations are not clear and convincing evidence. *See In re Rehab. of Indem. Ins.*, 2014 WL 637872, at *2 (quoting *Dunlap v. State Farm Fire & Cas. Co.*, 2008 WL 2415043, at *1 (Del. 2008)). The court denies the motion to disqualify.

---

[20] Mot. to Disqualify ¶¶ 1, 4, 5.

[21] *See id*. at 3 (stating merely that concurrent representation "raises substantial concern over whether [counsel] can satisfy its duty of loyalty, objectivity, and independence"); *id.* ("Given this entanglement, continued representation by [Counsel] poses a grave threat to the fairness and integrity of these proceedings."); *id.* ¶ 2 ("[Counsel] has enabled and advanced the interests of insiders at the expense of the Company's true governance and majority ownership."); *id.* ¶ 5 ("Continued participation by [Counsel] poses a grave threat to the fairness and integrity of these proceedings.").

## Motion to Strike Motion to Dismiss as Defective and Unauthorized (D.I. 89)

With this motion, Jones asks the court to strike plaintiffs and counterclaim defendants' motion to dismiss the counterclaims.[22]  It is inextricably linked to the Derivative Dismissal Motion and the Motion to Disqualify.  Jones moves to strike "on the grounds that the filing is procedurally defective, unauthorized, and ethically impermissible.[23]  The only arguments offered by Jones in support of the Motion to Strike are those offered by Jones in the Derivative Dismissal Motion[24] and the Motion to Disqualify,[25] so the court denies this motion for the same reasons it denies those motions.

## Motion to Preserve and Produce Representation and Conflict Materials (D.I. 91)

With this motion, Jones asks the court to order plaintiffs, counterclaim defendants, and Counsel to preserve and permit Jones to inspect "engagement letters, billing records, conflict analyses, and internal communications related

---

[22] Mot. to Strike Mot. to Dismiss, D.I. 89 ("Mot. to Strike").

[23] *Id*. at 1.

[24] *Compare id.* ¶¶ 1–2, *with* Mot. to Disqualify ¶¶ 1–5.

[25] *Compare* Mot. to Strike ¶ 3, *with* Deriv. Dismissal Mot. ¶¶ 3–6.

to [Counsel's] representation of any party in this litigation."[26]  The basis for this motion is the pendency of the Motion to Disqualify.[27]  Because the court denies the Motion to Disqualify, it also denies this motion.

### Motion for Entry of Default
### Pursuant to Rule 55(a) (D.I. 86)

With this motion, Jones seeks entry of default judgment on his counterclaims against Dorsey and HoldCo purportedly "for failure to plead or otherwise defend the Verified Counterclaim within the time required by law."[28]  Dorsey, HoldCo, and the other counterclaim defendants filed a motion to dismiss the Counterclaims 20 days after Jones filed the Counterclaims and five days before Jones filed the motion for default judgment.[29]  Acknowledging this, Jones argues that this motion to dismiss is not a valid response under the Court of Chancery Rules because it is "ethically

---

[26] Mot. to Pres. and Produc. Representation and Conflict Mat'ls, Prayer for Relief ¶ a, D.I. 91.

[27] *See id.* ¶ 1 ("There is a pending motion to disqualify [Counsel] based on incurable ethical conflicts of interest[.]").

[28] Mot. for Default Under R. 55(a), D.I. 86 ("Mot. for Default") at 1.  There is no "Rule 55(a)" in the Court of Chancery Rules, so the court interprets this motion to be a motion for entry of default judgment under Court of Chancery Rule 55(b).

[29] *Compare* Pls. and Countercl. Defs.' Mot. to Dismiss Countercl., D.I. 85 (filed Mar. 26, 2025), *with* Countercl., D.I. 84 (filed Mar. 6, 2025), *and* Mot. for Default (filed Mar. 31, 2025).

impermissible" based on Counsel's purportedly conflicted representation of plaintiffs, counterclaim defendants, and other persons.[30]

Court of Chancery Rule 55(b) "is permissive, not mandatory, giving the court the discretion to decide whether to enter a default judgment based on the particular set of facts before it." *Greystone Digit. Tech., Inc. v. Alvarez*, 2007 WL 2088859, at *3 (Del. Ch. July 20, 2007). The court declines to exercise that discretion to enter default judgment here for three reasons. First, the motion is based on Counsel's purported conflict, which the court has already rejected. Second, Jones has not cited, nor is the court aware of, any authority for the proposition that a party's timely pleading or motion becomes untimely retroactively if the court later disqualifies that party's counsel due to a conflict. Third, plaintiffs and counterclaim defendants have been actively litigating this case and have not shown the "willful or conscious disregard for the rules of the Court"[31] that the court looks for when considering entry of default judgment. This motion is denied.

---

[30] Mot. for Default 1–2.

[31] *U.S. Surgical Corp. v. Auhull*, 1998 WL 326493, at *2 (Del. Ch. May 28, 1998) (citing *Sundor Elec., Inc. v. E.J.T. Constr. Co.*, 337 A.2d 651, 652 (Del. 1975)).

### Motion to Confirm Interpleader of Funds
### by JPMorgan Chase Bank, N.A. (D.I. 87)

With this motion, Jones "requests that the Court formally confirm that the funds remain in interpleader status and under the Court's jurisdiction until final resolution of all claims, including [the] pending motions for default and declaratory relief."[32] Jones also asks the court to "[p]rohibit any disbursement or access to those funds without Court approval."[33] Finally, Jones requests the court order non-party JPMorgan Chase Bank, N.A. ("JPMorgan Chase") "to file a status report confirming the current location and disposition of the interpleaded funds."[34]

The court finds this motion runs counter to the current posture of the action. At the September 10, 2024 hearing on defendants' motions to dismiss and JPMorgan Chase's motion to intervene and interplead disputed funds, Jones confirmed to the court that he would "like to be off the [JPMorgan Chase] bank account[,]" and that he was "willing to be off of the bank account[.]"[35] Then, at the September 19 status conference, Jones represented

---

[32] Mot. to Confirm Interpleader of Funds by JPMorgan Chase Bank, N.A., D.I. 87 ¶ 4.

[33] *Id.* ¶ B.

[34] *Id.* ¶ C.

[35] D.I. 79 at 64.

that upon his removal as signatory, he would "no longer have access or control over the funds[.]"[36]  The same day, Jones filed the executed and notarized letter of signatory removal.[37]

The letter—signed by Jones—plainly addresses the bank accounts "discussed in hearings on September 10, 2024 and September 19, 2024 before the Delaware Court of Chancery[.]"[38]  It states that Jones "agreed to remove [himself] as an authorized signor [for the] accounts."[39]  The letter ends with a request:  "Please remove [Jones'] name as an authorized signor for both accounts."[40]  The removal of Jones as signatory was confirmed by the court's April 1, 2025 order on fees, where the court noted that, "after two court conferences and various filings, a resolution on signatory access was reached."[41]

The upshot of all this activity—including Jones' representations—is that Jones understood and agreed he would no longer be able to assert control

---

[36] D.I. 78 at 16.

[37] Executed & Notarized Letter of Signatory Removal, D.I. 73.

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] D.I. 90 ¶ 20.

over the funds in the JPMorgan Chase account. This interpleader motion is inconsistent with that activity, and the court will not entertain Jones' requests regarding JPMorgan Chase's interpleader any further. This motion is denied.

### Motion for Summary Judgment for Indemnification and Advancement of Legal Fees Pursuant to Delaware General Corporation Law § 145 (D.I. 68)

With this motion, Jones seeks entry of summary judgment directing "Plaintiff" to advance the legal fees he has purportedly incurred in this action.[42] He asserts that "Defendant has provided proper notice to Plaintiff, . . . yet Plaintiff has failed to fulfill its obligations. Accordingly, Plaintiff must advance all reasonable legal fees and expenses to Defendant under Delaware law and the applicable corporate documents."[43]

Actions for advancement are summary proceedings. 8 *Del. C.* § 145(k). They are separate from the proceedings giving rise to the potential entitlement to advancement.[44] Also, "[i]t is generally premature to consider

---

[42] Mot. for Summ. J. for Indemnification and Advancement of Legal Fees Pursuant to Del. Gen. Corp. Law § 145, D.I. 67 ("Mot. for Summ. J."); D.I. 68 (accompanying exhibits). There are three plaintiffs in this action, but it appears that the single "Plaintiff" to which Jones is referring is the Company. *See* Mot. for Summ. J. 1 (explaining Jones is "seeking an order that [Jones] is entitled to indemnification and advancement of legal fees under the governing documents of [the Company]").

[43] Mot. for Summ. J. 3.

[44] *See Kuang v. Cole Nat. Corp.*, 884 A.2d 500, 509 (Del. 2005) ("[T]he scope of an advancement proceeding under Section 145(k) of the DGCL is limited to

indemnification prior to the final disposition of the underlying action."

*Paolino v. Mace Sec. Int'l, Inc.*, 985 A.2d 392, 397 (Del. Ch. 2009).

If Jones wants the court to determine his entitlement to advancement of legal fees and expenses, he will need to file a separate and appropriate action for it against the appropriate parties. This motion is denied.

**Motion to Expedite and Request for
Immediate Status Conference (D.I. 88)**

The final motion is Jones' motion asking the court to expedite consideration of his motions and convene an immediate status conference.[45] The motion is denied in full. The request for expedited consideration is moot because the court has addressed all of Jones' pending motions in this report. The request for a status conference is denied because two motions are pending which still require complete briefing—Plaintiffs and Counterclaim Defendants' Motion to Dismiss Counterclaims[46] and Plaintiffs' Motion to

---

determining 'the issue of entitlement according to the corporation's advancement provisions and not to issues regarding the movant's alleged conduct in the underlying litigation.'") (quoting *Homestore, Inc. v. Tafeen*, 886 A.2d 502, 504 (Del. 2005)); *Weil v. VEREIT Operating P'ship, L.P.*, 2018 WL 834428, at *6 (Del. Ch. Feb. 13, 2018) ("Advancement cases are summary proceedings where the only question involves the extension of credit.") (citing *Advanced Mining Sys., Inc. v. Fricke*, 623 A.2d 82, 84 (Del. Ch. 1992)).

[45] Mot. to Expedite and Req. for Immediate Status Conf., D.I. 88.

[46] D.I. 85.

Compel Discovery Responses from Robert T. Jones[47]—and it will be more useful for the court to have these motions addressed before holding a status conference with the parties.

To that end, the parties must submit by September 22, 2025 a joint proposed schedule to complete briefing on these motions. If the parties cannot agree on a proposed schedule, they must submit their respective positions in a single document by September 22.

*     *     *

For the reasons explained above, the court denies each of Jones' pending motions. Under Court of Chancery Rule 144(c)(2)(A), exceptions to this ruling are stayed pending issuance of a final report in this case.

Very truly yours,

/s/ *Christian Douglas Wright*

Magistrate in Chancery

---

[47] D.I. 97.